IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY YOUNG

      v.  :  Civil Action No. DKC 11-1970

PRINCE GEORGE'S COUNTY, MD,
et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action is the "partial motion to dismiss" filed by Defendants.  (ECF No. 25).  The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendants' motion, which will be construed as a partial motion for summary judgment and a partial motion for judgment on the pleadings, will be granted.

## I.  Background

Plaintiff Jeffrey Young alleges the following limited facts in his second amended complaint.  On June 7, 2008, Plaintiff was at the home of his friend William Ross in Capitol Heights, Maryland.  During his visit, he saw police officers from Prince George's County ("the County") beating Mr. Ross.  Defendant T. Hall, one of the County officers then present at Mr. Ross's home, turned toward Plaintiff and told him to "mind his 'f---ing

business'" before punching Plaintiff in the eye.  (ECF No. 27 ¶¶ 5-6).  At that time, the remaining defendants in this case – officers A. Mirza, J. Walker, Mitchell, and Young – "charged" Plaintiff.  (*Id.* ¶ 6).  The officers handcuffed Plaintiff and began dragging him, "intermittently lifting and dropping him on the ground, shouting at him all the while to 'walk,' even though he could not."  (*Id.*).

The officers subsequently filed a "false" statement of probable cause against Plaintiff, which resulted in "the issuance of [unspecified] false charges against" him.  (*Id.* ¶ 7).  Those charges were "later terminated in favor of" Plaintiff.  (*Id.*).  As a result of this entire incident, Plaintiff "suffered severe physical and mental pain and suffering," including "bruises and contusions."  (*Id.* ¶ 8).  Plaintiff also "incurred expenses for legal services as well as for hospital and physician care."  (*Id.*).

On June 3, 2011, Plaintiff filed a ten-count complaint in the circuit court for Prince George's County.  (ECF No. 2).  In counts one through six, he alleged that the Defendant officers had committed various Maryland common law and constitutional torts during the incident above.  In count nine, he alleged, pursuant to 42 U.S.C. § 1983, that the officers' actions violated the Fourth Amendment to the United States Constitution. The remaining counts were brought against the County.  In count

2

seven, Plaintiff asserted that the County was liable for the common law and state constitutional torts of the Defendant officers under the doctrine of *respondeat superior*.[1]   Counts eight and ten alleged that the County maintained an "unconstitutional custom, policy, . . . or practice" regarding the use of excessive force, in violation of Articles 24 and 26 of the Maryland Declaration of Rights, as well as the Fourth Amendment.  (*Id.* ¶ 53).   As to each count, Plaintiff seeks $10 million in compensatory damages; he also seeks $10 million in punitive damages as to all claims except counts eight and ten.[2]

_____

[1]  *Respondeat superior* is a theory of liability, not an independent cause of action.  *Mason v. Bd. of Educ.*, No. WMN-10-3143, 2011 WL 89998, at *2 n.3 (D.Md. Jan. 11, 2011).   Although inartfully pleaded, Plaintiff's intent to allege the common law and state constitutional torts against the County, and the complaint will be so construed.

[2]  Three days after Plaintiff filed his complaint, Mr. Ross filed a virtually identical complaint against the County and Officers Hall and Mirza in the County circuit court.   The procedural histories of the cases – as well as the bases on which Defendants seek dismissal – are also essentially identical.

According to the allegations in Mr. Ross's second amended complaint, Mr. Ross "was attempting to stabilize his son, who had just been shot," when he heard an unnamed police officer say "get him" to Officers Mirza and Hall.  (*See* No. DKC 11-1984, ECF No. 27 ¶ 5).   Officers Mirza and Hall then "rushed [Mr. Ross], forced him onto the ground, beat him on his legs, with fists, feet, and batons, handcuffed him, . . . and dragged him along the ground, intermittently picking him up and dropping him." (*Id.* ¶ 6).   The officers purportedly also filed a false statement of probable cause against Mr. Ross, but the resulting charges were "later terminated in [his] favor." (*Id.* ¶ 7).

On July 19, 2011, Defendants removed the case to this court. They subsequently filed motions to dismiss or, in the alternative, for summary judgment as to all counts. (ECF Nos. 10, 15). On September 30, 2011, Plaintiff opposed these motions in their entirety and filed an amended complaint. The amended complaint set forth the same ten counts as the original complaint but provided some additional facts regarding the incident above. (ECF No. 16). On October 14, 2011, Defendants moved to dismiss all counts of the amended complaint. (ECF No. 18).[3] Plaintiff again opposed Defendants' motion.

On November 3, 2011, Plaintiff moved for leave to file a second amended complaint. This complaint set forth the same counts as Plaintiff's original and first amended complaints, but it changed the date of the alleged incident from June 7, 2011, to June 7, 2008.[4] (ECF No. 23). On November 21, 2011, Defendants simultaneously filed a partial answer to the second amended complaint and a "partial motion to dismiss." (ECF Nos.

---

[3] On October 17, 2011, a paperless order was entered denying as moot Defendants' original motions to dismiss, or in the alternative for summary judgment. (ECF No. 19).

[4] According to Plaintiff, the 2011 incident date in the original and first amended complaints resulted from a typographical error.

24, 25).[5]  On November 22, 2011, the court granted Plaintiff's
motion for leave to file the second amended complaint and denied
as moot Defendants' motion to dismiss the first amended
complaint.  (ECF No. 26).[6]  Plaintiff thereafter opposed
Defendants' motion.  Defendants have replied to Plaintiff's
opposition.

## II.  Standards of Review

Defendants' "partial motion to dismiss" seeks dismissal of
counts one through eight and count ten of the second amended
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]
But because the court will consider matters outside the
pleadings when resolving certain counts and because Defendants'
motion was filed contemporaneously with their "partial answer,"

_____

[5] Defendants' partial answer responded only to the
allegations in counts nine and ten of the second amended
complaint.

[6] Pursuant to the court's instruction, the clerk
subsequently filed Plaintiff's second amended complaint
separately on the docket as ECF No. 27.

[7] Defendants' motion only expressly lists counts one through
eight as the counts for which they seek dismissal.  The motion
does, however, incorporate the substance of Defendants'
previously filed motions – which explicitly requested dismissal
of count ten.  It also states that the second amended complaint
"failed to plead the existence of an official policy or custom
that is fairly attributable to the County" as the "cause of
[Plaintiff's] deprivation of constitutional rights."  (ECF No.
25 ¶ 5).  Both counts eight and ten included such allegations.
Accordingly, the sufficiency of Plaintiff's allegations as to
count ten will be evaluated when resolving Defendants' motion.

treating the motion as one to dismiss pursuant to Rule 12(b)(6) is improper. *See* Fed.R.Civ.P. 12(b), (d); *Nielsen Co. (US), LLC v. comScore, Inc.*, --- F.Supp.2d ---, 2011 WL 4937158, at *1 n.2 (E.D.Va. Aug. 19, 2011). Therefore, with regard to counts one through eight, "the motion [will] be treated as one for summary judgment" because the court will rely on a declaration filed by Defendants and admissions made in Plaintiff's opposition papers – both of which constitute "matters outside the pleadings" – when resolving the parties' arguments. *See* Fed.R.Civ.P. 12(d), 56; *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2[d] Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading for purposes of Rule 12(b).").[8]  With regard to

---

[8] When "matters outside the pleadings are presented to and not excluded by the court, [a Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56 [and a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). The requirement of "reasonable opportunity" means that the court must provide all parties with "some indication . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the [non-moving] party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). If the non-moving party is "aware that material outside the pleadings is before the court," however, "the party has [proper] notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Fare Deals Ltd v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 692-93 (D.Md. 2001) (internal quotation marks omitted); *Piner v. E.I. Dupont De Nemours & Co.*, 238 F.3d 414, at *5 (4th Cir. 2000) (table opinion) (reasoning that Rule 12(d) "does not require formal notification by the court").

count ten, the motion will be treated as one for judgment on the pleadings because Defendants filed their motion simultaneously with a "partial answer" responding to Plaintiff's allegations in that count.  *See* Fed.R.Civ.P. 12(c); *Nielsen Co.*, 2011 WL 4937158 ("When a party files a Rule 12(b)(6) motion to dismiss contemporaneously with or after its answer to a complaint or counterclaim, the motion . . . is properly construed as a motion for judgment on the pleadings pursuant to Rule 12(c).").

   **A.   Summary Judgment Standard**

   A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is

---

   Here, Plaintiff had "more than adequate notice that [Defendants'] motion might be treated as one for summary judgment" as to counts one through eight.  *Fare Deals Ltd.*, 180 F.Supp.2d at 693.  Defendants' "partial motion to dismiss" those counts relies heavily on an admission within Plaintiff's opposition papers and incorporates information from prior motion papers.  The incorporated information consists of two motions to dismiss or, alternatively, for summary judgment, along with an attached declaration in support of Defendants' arguments as to counts one through eight. *Cf. Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) (concluding that a party had sufficient notice that the district court might convert a Rule 12(b)(6) motion to one for summary judgment where the motion was captioned "Motion to Dismiss or, in the alternative, Motion for Summary Judgment" and relied on materials outside the pleadings to support its arguments).

   Plaintiff has also conceded the very point asserted by Defendants in their declaration (that he failed to send the required statutory notice), indicating that permitting Plaintiff to "file counter affidavits or pursue reasonable discovery" on that issue would be futile. *Gay*, 761 F.2d at 177.  Accordingly, Defendants' "partial motion to dismiss" will be construed as a motion for summary judgment as to counts one through eight.

entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

**B.    Judgment on the Pleadings Standard**

The standard applicable to a motion for judgment on the pleadings is the same as that applied when analyzing a motion to dismiss for failure to state a claim. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 3318 (2010); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.

1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, the court need not accept unsupported legal allegations.   *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989).   Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Analysis

Defendants assert that counts one through eight cannot proceed because Plaintiff has not complied with the notice requirement of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-304.   As to count ten, Defendants contend that Plaintiff's claim for municipal liability under § 1983 (his "*Monell* claim") cannot proceed

because he fails to plead facts that "give rise to the inference that an unconstitutional custom, policy, or practice exists." (ECF No. 29, at 3) (internal quotation marks omitted). Plaintiff vigorously contests both arguments.

### A. Plaintiff's Failure to Comply with the LGTCA's Notice Requirement is Fatal to His State Law Claims

Section 5-304(b) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."[9]  In Prince George's County, written notice stating the time, place, and cause of the injury "shall be given in person or by certified mail . . . by the claimant or [his] representative . . . to the county solicitor or county attorney." *Id.* § 304(c)(2), (c)(3).  This notice requirement has long been a condition precedent to the claimant's right to maintain a tort action for damages under Maryland law, *Grubbs v. Prince George's Cnty.*, 267 Md. 318, 320-21 (1972), and failure to comply with it will bar such tort claims, *see Renn v. Bd. of Comm'rs*, 352 F.Supp.2d 599, 602 (D.Md. 2005); *Bibum v. Prince George's Cnty.*, 85 F.Supp.2d 557, 566 (D.Md. 2000).

---

[9] All quoted statutory language is taken from the version of the LGTCA in place on June 7, 2008, the date of the incident that gave rise to Plaintiff's claims.

Although Plaintiff alleged in his complaints that he "provided timely written notice" of his claims to Defendants, (ECF No. 2 ¶ 12; ECF No. 16 ¶ 14; ECF No. 27 ¶ 9), Defendants have submitted a declaration from Dawn Accipiter, an administrative aide in the Office of the County Attorney, which states that Plaintiff did not provide such notice (ECF No. 10-2, at 2; ECF No. 15-2, at 2). In response, Plaintiff "concedes that the statutory notice was not sent." (ECF No. 13, at 1; ECF No. 21, at 1; ECF No. 28, at 1). Yet despite this concession, Plaintiff asserts that his failure to comply with the LGTCA's notice requirement is not fatal to his state law claims for two reasons. First, he contends that the LGTCA violates article XI-A, section 4 of the Maryland Constitution and is, therefore, unconstitutional. Second, assuming *arguendo* that the LGTCA is constitutional, he asserts that its notice requirement does not apply to state constitutional torts. Both of these arguments are without merit.

## 1. The LGTCA Does Not Violate Article XI-A, Section 4 of the Maryland Constitution

Article XI-A of the Maryland Constitution, popularly known as the "Home Rule Amendment," enabled counties adopting a home rule charter "to achieve a significant degree of political self-determination. Its purpose was to transfer the General Assembly's power to enact many types of county public laws to

the . . . home rule counties." *Edwards Sys. Tech. v. Corbin*, 379 Md. 278, 288 (2004) (internal quotation marks omitted).  The General Assembly granted this power to the counties through its enactment of the Express Powers Act, Md. Code Ann., Art. 25-A.

Prince George's County is a chartered home rule county under Article XI-A.  *Id.* at 287.  When the County enacted its charter in 1970, section 1013 of the charter stated that the county "waive[d] the immunity it would otherwise enjoy at common law for its acts performed in a governmental (as opposed to a proprietary) capacity." *Bradshaw v. Prince George's Cnty.*, 284 Md. 294, 301 (1979), *overruled in part on other grounds by James v. Prince George's Cnty.*, 288 Md. 315 (1980).  The County had the power to waive its sovereign immunity at that time pursuant to the express power granted by the General Assembly in section 5(S) of the Express Powers Act.  *Id.* at 297-98.[10]  Section 1013, in varying forms, remained in place until 1987, when the General Assembly enacted the LGTCA and established uniform rules regarding the waiver of sovereign immunity by local governments.

---

[10] This section permitted a chartered county to pass "such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county."  Article 25-A, section 5(CC) did permit chartered counties to waive their sovereign immunity subject to certain conditions, but this section was not added until 1976, following passage of the County's charter. *Prince George's Cnty. v. Fitzhugh*, 308 Md. 384, 390 n.4 (1987).  Section 5(CC) was repealed by the LGTCA. *Rios v. Montgomery Cnty.*, 386 Md. 104, 126 (2005).

The LGTCA repealed any inconsistent provisions in county charters, including section 1013. *See Hansen v. City of Laurel*, 420 Md. 670, 694 n.15 (2011); *Williams v. Prince George's Cnty.*, 112 Md.App. 526, 553 n.3 (1996).[11]   As discussed above, it also required claimants to satisfy a notice provision in order to maintain a suit for damages against a local government or its employees.

Plaintiff contends, however, that the LGTCA's "notice requirement cannot bar any claims" because the statute's enactment violated article XI-A, section 4 of the Maryland Constitution.   (ECF No. 28, at 7).   Article XI-A, section 4 provides as follows:

> From and after the adoption of a charter under the provisions of this Article by . . . any County of this State, no public local law shall be enacted by the General Assembly for said . . . County on any subject covered by the express powers granted [in the Express Powers Act].   Any law so drawn as to apply to two or more of the geographical sub-divisions of this State shall not be deemed a Local Law, within the meaning of this Act.   The term "geographical sub-division" herein used shall be taken to mean the City of Baltimore or any of the Counties of this State.

---

[11] Indeed, the County actually removed section 1013 from its charter in 2002, noting that the LGTCA had rendered that section's "general waiver of immunity" obsolete. *Hansen*, 420 Md. at 694 n.15.

Although stated with little detail, the gist of Plaintiff's argument with regard to article XI-A, section 4 appears to be that the LGTCA is a "public local law" that "covered" one of the express powers the General Assembly had granted to the County. This argument, for which Plaintiff provides no support, fails at the first step because the LGTCA is a public general law, rather than a public local law.

Classifying a statute as either local or general "is based on subject matter and substance and not merely on form." *Tyma v. Montgomery Cnty.*, 369 Md. 497, 507 (2002).   A local law applies to only one geographical subdivision in the State. *Id.*; *Steimel v. Bd. of Election Supervisors*, 278 Md. 1, 2, 5 (1976) (explaining that a local law is "confined in its operation to prescribed territorial limits").   A general law, on the other hand, pertains to two or more geographical subdivisions, *see id.* (citing Md. Const. art. XI-A, § 4), and "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state," *Cole v. Sec'y of State*, 249 Md. 425, 435 (1968).

By its plain language, the LGTCA's provisions extend to far more than one geographical subdivision within the State. Indeed, the LGTCA defines the term "local government" to include

15

numerous geographical subdivisions, including Baltimore City, any "chartered county established under Article 25A of the [Maryland] Code," and any "code county established under Article 25B of the [Maryland] Code," among others. Md. Code Ann., Cts. & Jud. Proc. § 5-301. Thus, unlike local legislation "punctuated with references" to a specific geographical subdivision within the State, *Steimel*, 278 Md. at 5-6 (reasoning that a law's repeated references to only "Prince George's County" suggested that it was a public local law), the LGTCA is a multi-subdivision scheme, *cf. State's Attorney v. City of Balt.*, 274 Md. 597, 607 (1975) (finding legislation that formed "an integral part of [an] entire bi-county [or multi-county] scheme" to be a public general law (internal quotation marks omitted)).

The LGTCA also addresses a subject that has importance throughout the State. "The overarching purpose of the [LGTCA] was to bring stability to what was perceived as an escalating liability picture for local governments by containing their exposure while guaranteeing payment to tort victims of judgments against [local government] employees . . . in certain situations." *Balt. Police Dep't v. Cherkes*, 140 Md.App. 282, 324 (2001). Thus, in addition to providing injured plaintiffs inside and outside the State with a remedy for injuries caused by local government employees acting without malice in the scope

16

of their employment, *Ashton v. Brown*, 339 Md. 70, 107-08 (1995), the LGTCA seeks to maintain the incentive of *all* local government employees "to perform to the best of their abilities," *Pavelka v. Carter*, 996 F.2d 645, 649 (4th Cir. 1993). Because of its potential "impact on . . . persons throughout the State" and even beyond, *Holiday Universal, Inc. v. Montgomery Cnty.*, 377 Md. 305, 317 (2003), the LGTCA "affect[s] matters of significant interest" to more than one of the State's geographical subdivisions and "deals with the general public welfare," *Cole*, 249 Md. at 435. Similar to General Assembly legislation regulating elections, *Norris v. Mayor of Balt.*, 172 Md. 667 (1937), natural resources, *Bradshaw v. Lankford*, 73 Md. 428 (1891), and state revenues derived from licenses, *Gaither v. Jackson*, 147 Md. 655 (1925), it is, therefore, a public general law. Accordingly, its enactment did not violate article XI-A, section 4 of the Maryland Constitution, and Plaintiff's attempt to avoid compliance with the LGTCA's notice requirement on this basis must fail.[12]

---

[12] In his motion papers, Plaintiff repeatedly asks which provision of the Maryland Constitution empowered the General Assembly to repeal section 1013 of the County's charter. Article XI-A, section 4 provides the answer to Plaintiff's rhetorical question. Indeed, its plain language gives the General Assembly power to enact public general laws even if they conflict with laws properly enacted by a local government. *See State's Attorney*, 274 Md. at 606 ("Under Art. XI-A, s[ection] 4, of the Maryland Constitution, the General Assembly may enact

**2.    The LGTCA Applies to State Constitutional Torts**

Plaintiff also contends that his failure to comply with the LGTCA's notice requirement does not bar his state constitutional tort claims because the LGTCA "do[es] not apply to the state constitutional torts pled in this action." (ECF No. 28 at 2). As support for this argument, Plaintiff relies solely on dicta from a single opinion of the Court of Special Appeals of Maryland. (*See* ECF No. 28, at 2-4) (quoting *Prince George's Cnty. v. Longtin*, 190 Md. App. 97, 117-21 (2010), *aff'd*, 419 Md. 450 (2011)).[13]   The plaintiff in *Longtin* contended that the LGTCA's notice requirement was inapplicable to state constitutional torts, but the Court of Special Appeals declined to resolve this issue and decided the case on other grounds.[14] The court did, however, briefly touch on the plaintiff's argument at the outset of its analysis.   Explaining first that

---

legislation inconsistent with the express powers it had previously granted to Baltimore City or to the charter counties if it does so by public general law.").

[13] Indeed, the argument in Plaintiff's motion papers on this issue merely copies – verbatim - the discussion from the *Longtin* opinion.

[14] The Court of Special Appeals ultimately concluded that the plaintiff had complied with the LGTCA's notice requirement as to all tort claims, thus making it unnecessary to determine whether the LGTCA's notice requirement applies to state constitutional torts.   The Court of Appeals of Maryland affirmed the decision of the Court of Special Appeals on this ground. *Longtin*, 419 Md. 450.   In so doing, it neither resolved nor analyzed the applicability of the notice requirement to state constitutional torts. *Id.* at 467.

both Maryland appellate courts had previously applied the LGTCA to "all torts without distinction, including . . . constitutional torts," 190 Md.App. at 117-18 (quoting *Thomas v. City of Annapolis*, 113 Md.App. 440, 457 (1997)), the *Longtin* court subsequently stated that it was "[l]ess clear . . . whether the [LGTCA's] restrictions . . . would defeat . . . recovery . . . in every respect [as] to State Constitutional torts," *id.* at 118.

In light of the LGTCA's expansive terms and pre- and post-*Longtin* case law indicating that the LGTCA's notice requirement applies to state constitutional torts, this court is disinclined to accept Plaintiff's argument by relying solely on the dicta in *Longtin*.  *See Cole v. Prince George's Cnty.*, No. AW-10-70, 2010 WL 3169843, at *5 (D.Md. Aug. 10, 2010) (rejecting a plaintiff's reliance on *Longtin* to support the same argument for similar reasons).  First, there is no language in the LGTCA indicating that the notice requirement excludes state constitutional torts. The notice provision broadly states that a claimant may not bring "an action for unliquidated damages" without providing the requisite notice.  Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). Similarly, the statutory provisions setting forth the "[n]ature and extent of legal representation" as well as the liability and potential defenses of local governments refer generally to "tortious acts or omissions committed by any employee within the

19

scope of [his] employment." *Id.* §§ 5-302, 5-303.   This expansive language, which does not except state constitutional torts, suggests that the LGTCA applies to all categories of torts.

Additionally, although neither the Court of Appeals nor the Court of Special Appeals had squarely addressed Plaintiff's argument prior to *Longtin*, both courts had emphasized the LGTCA's applicability to all torts. *See, e.g.*, *Ashton*, 339 Md. at 107 n.19 ("[T]here is no exception in the [LGTCA] for constitutional torts.   In fact, there is no exception in the statutory language for any category of torts." (citing Md. Code Ann. §§ 5-302, 5-303)); *Thomas*, 113 Md.App. at 457.   The Court of Special Appeals also repeatedly refused to permit tort claims, including those involving state constitutional torts, to proceed where the plaintiff had not complied with the LGTCA's notice requirement. *See, e.g.*, *Ransom v. Leopold*, 183 Md.App. 570, 579-89, 587 (2008) (upholding the circuit court's dismissal of several claims, including state constitutional torts, for failure to comply with the LGTCA); *White v. Prince George's Cnty.*, 163 Md.App. 129, 140-58 (2005) (same), *cert. denied*, 389 Md. 401 (2005).

Following *Longtin*, these appellate courts have strongly insinuated – albeit without directly holding - that the LGTCA's notice requirement does apply to state constitutional torts.

20

*See Hansen*, 420 Md. at 682 n.7 ("Whether the same [notice] requirement applies to constitutional claims . . . remains uncertain.  We have intimated as much, however [in our prior opinions]."); *Mitchell v. Hous. Auth.*, 200 Md.App. 176, 198-99 (2011) ("Unlike the damages cap provision of the LGTCA, which has been subject to differing interpretations . . . , the LGTCA's notice provision uniformly has been understood . . . to apply to tort actions for money damages brought . . . against local governments entities."), *cert. denied*, 423 Md. 452 (2011). Somewhat ironically, in both of these opinions, the courts relied on the opinion of the Court of Appeals in *Longtin* for support.  *See Hansen*, 420 Md. at 682 n.7 (noting that *Longtin* had applied "the LGTCA['s] notice requirement to a plaintiff's constitutional claims"); *Mitchell*, 200 Md.App. at 199 (explaining that the *Longtin* court held "implicitly that the notice provision of the LGTCA applies to a cause of action against a local government even when the damages cap provision of the LGTCA does not").

Finally, Plaintiff's argument overlooks the wealth of pre- and post-*Longtin* cases from this district that have applied the LGTCA's notice requirement to state constitutional tort claims. *See, e.g., Royster v. Jasime*, No. PJM-10-2121, 2011 WL 4005269, at *4 (D.Md. Sept. 7, 2011); *Owens-El v. Kapfhammer*, No. L-10-3213, 2011 WL 1869594, at *3 (D.Md. May 13, 2011); *Cole*, 2010 WL

3169843, at *5; *Hayat v. Fairely*, No. WMN-08-3029, 2009 WL 2426011, at *6 (D.Md. Aug. 5, 2009); *Savage v. Mayor of Salisbury*, No. CCB-08-3200, 2009 WL 1119087, at *5 (D.Md. Apr. 22, 2009); *Luy v. Balt. Police Dep't*, 326 F.Supp.2d 682, 693 (D.Md. 2004), *aff'd*, 120 F.App'x 465 (4th Cir. 2005); *Williams v. Bd. of Trs. of Frederick Community Coll.*, No. CCB-03-cv-2123, 2004 WL 45517, at *5 (D.Md. Jan. 4, 2004);[15] *Gonzalez v. Cecil Cnty.*, 221 F.Supp.2d 611, 615-16 (D.Md. 2002); *Curtis v. Pracht*, 202 F.Supp.2d 406, 414 (D.Md. 2002); *Lanford v. Prince George's Cnty.*, 199 F.Supp.2d 297, 302-03 (D.Md. 2002); *Carter v. Jess*, 179 F.Supp.2d 534, 541 (D.Md. 2001); *Bibum*, 85 F.Supp.2d at 566. In light of this authority, Plaintiff's assertion that the LGTCA's notice requirement does not apply to state constitutional torts is unpersuasive.  Accordingly, his failure to comply with the LGTCA bars his state law claims, and summary judgment will be entered in Defendants' favor as to counts one through eight.  *See Cole*, 2010 WL 3169843, at *4-5 (concluding that a plaintiff's common law and state constitutional tort

---

[15] In *Longtin*, the Court of Special Appeals appeared to cite *Williams* as an instance in which a court declined to apply the LGTCA to state constitutional torts.  *Williams*, however, expressly acknowledged that the LGTCA "applies to all torts without distinction, including intentional and constitutional torts."  2004 WL 45517, at *5 (quoting *Thomas*, 113 Md.App. at 457).  The *Williams* court did ultimately permit the plaintiff's state constitutional claim to proceed, but it did so only because she had complied with the LGTCA by providing adequate notice of that claim to the local government.

claims against individual police officers and the County could not proceed because the plaintiff had not satisfied the LGTCA's notice requirement); *Bibum*, 852 F.Supp.2d at 566 (same).[16]

## B.  Plaintiff Fails to Plead Sufficient Facts to State a *Monell* Claim

Defendants also move for judgment on the pleadings as to count ten, Plaintiff's *Monell* claim.  Plaintiff contends that Defendants' motion on this count "amounts to a demand for discovery outside of the discovery rules" and seeks to impose a "heightened pleading standard" upon him.  (ECF No. 28, at 7-8).

The Supreme Court of the United States has held that a plaintiff's municipal liability claim is not subject to a "heightened pleading standard." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  To survive a motion to dismiss, however, a plaintiff alleging a *Monell* claim must provide "'a short and plain statement of the claim showing that [he] is entitled to relief.'"    *Lanford*,    199    F.Supp.2d    at    304    (quoting

---

[16]  The LGTCA provides that its notice requirement may be excused "upon motion and for good cause shown."  Md. Code Ann., Cts. & Jud. Proc. § 5-304(c).  Plaintiff, however, has not made such a motion here, nor has he alleged any facts that would establish good cause and excuse his non-compliance with the LGTCA.  *See Luy*, 326 F.Supp.2d at 693 (dismissing a plaintiff's defamation claim for failure to comply with the LGTCA's notice requirement and noting that the plaintiff had neither made a motion nor set forth facts demonstrating good cause for his non-compliance).

Fed.R.Civ.Proc. 8(a)(2)); *Harden v. Montgomery Cnty.*, No. 8:09-CV-03166-AW, 2010 WL 3938326, at \*3 (D.Md. Oct. 6, 2010) (finding *Leatherman* "inapplicable" because the plaintiff had failed to state a *Monell* claim under the "generally-applicable pleading standard" of Rule 8(a)).  Plaintiff fails to satisfy this standard.

> Under *Monell*, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984).  Policy or custom may be found in a number of ways, such as "in . . . 'persistent . . . practices of [municipal] officials having the *de facto* force of law.'" *Milligan*, 743 F.2d at 229.  "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018.  Policy or custom may also "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *Milligan*, 743 F.2d at 229–30.  Under narrow circumstances, policy may also be inferred "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Id.* at 230.  However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.*

*Lanford*, 199 F.Supp.2d at 304 (citations omitted).

The second amended complaint alleges municipal liability principally on the basis of the County's inaction with regard to the use of excessive force. Plaintiff's allegations, however, merely state in conclusory terms that the County failed "to adequately train and supervise officers in the proper use of force" and that it "consistently failed" to investigate, discipline, and record acts of excessive force, thereby demonstrating "gross disregard" for its citizens' Fourth Amendment rights and leading to his injuries. (ECF No. 27 ¶¶ 61-63); *see Milligan*, 743 F.2d at 230 (upholding the district court's dismissal of a plaintiff's *Monell* claim where the complaint alleged only that the City was "'grossly negligent' in failing adequately to train its personnel and that this exhibited 'callous disregard' for [the plaintiff]'s constitutional rights"); *Jackson v. Brickey*, 771 F.Supp.2d 593, 597-98, 604 (W.D.Va. 2011) (concluding that a plaintiff's allegations of "institution-wide failure to train . . . and . . . deliberate[] indifferen[ce] to Constitutional rights" constituted "naked assertion[s] devoid of further factual enhancement" that were "not entitled to the assumption of truth" (quoting *Iqbal*, 129 S.Ct. at 1949-50)).

Indeed, the second amended complaint provides "no *factual* allegations of known, widespread conduct by [County] employees comparable to that alleged as to [Plaintiff]." *Milligan*, 743

25

F.2d at 230 (emphasis added); *Drewry v. Stevenson*, No. WDQ-09-2340, 2010 WL 93268, at *3-4 (D.Md. Jan. 6, 2010).[17]   It further fails to allege any facts to "support the conclusion that the [officers'] conduct . . . was part of a known course of conduct by [County] employees having manifest potential for causing constitutional deprivations to an identifiable group of persons occupying a special relationship to the state." *Milligan*, 743 F.2d at 230 n.2 (declining to consider an alleged group to be "identifiable only post hoc," and reasoning that the group must be "identifiable in advance of the implementation of the policy in question" in order for such a special relationship to be found (internal quotation marks omitted)).   Faced with *identical*

---

[17]   Even considering the allegations in Mr. Ross's second amended complaint in conjunction with Plaintiff's allegations (which Plaintiff does not ask the court to do) would not alter this conclusion.   Reading the two complaints together indicates that Plaintiff and Mr. Ross's allegations stem from a *single* incident at Mr. Ross's home involving only the few officers listed as defendants in these companion cases.   *See Brickey*, 771 F.Supp.2d at 604 (finding a plaintiff's allegations of municipal liability for failure to train insufficient given that he asserted only that he – and then his sons – were arrested by multiple police officers following a verbal dispute with one of the officers); *Drewry*, 2010 WL 93268, at *3 (concluding that a complaint failed to show municipal liability where the plaintiff's allegations were "limited to an incident involving one officer on one occasion" (citing *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000)); *Chin v. City of Balt.*, 241 F.Supp.2d 546, 549 (D.Md. 2003) (declining "to infer, from one event [involving an illegal search by multiple police officers] that the Police Department itself caused the alleged constitutional wrong" (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999))).

allegations of municipal liability in a recent civil rights action, Judge Williams concluded that the plaintiff's allegations of inaction failed to state a claim under *Monell*. *See Lewis v. Simms*, No. AW-11-cv-2172, 2012 WL 254024, at *3-4 (D.Md. Jan. 26, 2012) (declaring the plaintiff's allegations to be "conclusory," "inadequate," and insufficient to demonstrate "plausibly . . . an entitlement to relief"). Here, Plaintiff's conclusory assertions of municipal liability based on the County's purported inaction are similarly insufficient.

Plaintiff also alleges municipal liability on the basis of an "official policy" regarding the use of excessive force, contending that this policy "amounted to a gross disregard of the rights of Maryland citizens" and ultimately led to his injuries. (ECF No. 27 ¶ 64). He wholly fails, however, to support this bald conclusion with any factual allegations beyond those surrounding his own injury and arrest.[18] "While the standards of pleading only require a short plain statement under Rule 8(a), the court need not accept conclusory factual allegations devoid of any reference to actual events." *Lanford*,

---

[18] Once again, for the reasons explained in the prior footnote, even considering the allegations in Mr. Ross's second amended complaint would not enable Plaintiff to state a claim for municipal liability.

199 F.Supp.2d at 305 (citing *Hirst*, 604 F.2d at 847);[19] *Boliek v. Frendlich*, No. 04-3655, 2005 WL 1363980, at *6 (D.Md. June 7, 2005) (reasoning that "boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [county] policy does exist, are insufficient" (quoting *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 479 (7th Cir. 1997)). Accordingly, Plaintiff has failed to plead sufficient facts regarding an "official [County] policy" to state a claim for municipal liability.   *See Lee v. O'Malley*, 533 F.Supp.2d 548, 553 (D.Md. 2007) (concluding that a plaintiff's mere assertion that "arrests [were] a matter of policy, tradition and custom within the Baltimore City Police Department" failed to support

---

[19]   Plaintiff's assertion that *Lanford* "is clearly distinguishable from the instant case," (ECF No. 28, at 9), is unconvincing as Plaintiff has provided no factual support for his municipal liability claim, much like the plaintiff in *Lanford*. His attempts to analogize the present action to *Chen v. Mayor of Balt.*, No. L-09-47, 2009 WL 2487078 (D.Md. Aug. 12, 2009), and *Ames v. Harford Cnty.*, No. RDB 09-1929, 2010 WL 1791547 (D.Md. May 4, 2010), are also unpersuasive. *See Lewis*, 2012 WL 254024, at *3-4 (finding that a plaintiff who attempted to analogize to *Chen* and *Ames* had failed to state a claim for municipal liability based on allegations identical to those in the instant case).  In *Chen*, the court permitted the plaintiff's *Monell* claim to proceed past the motion-to-dismiss stage where he had alleged two "separate incidents," occurring nearly one week apart, in which the City had purportedly committed analogous due process violations.  2009 WL 2487078, at *5. Additionally, in *Ames*, although the court described the plaintiffs' *Monell* allegations as "not voluminous," 2010 WL 1791547, at *10, the complaint there contained many more factual allegations from which municipal liability could be inferred.

"any claim that [his] arrest was the result of some custom or policy").

Thus, despite twice amending his complaint, Plaintiff has failed to set forth facts in his second amended complaint that allege a plausible claim for municipal liability. His opposition papers also do not indicate he is aware of any facts that would enable him to state such a cause of action. Accordingly, judgment on the pleadings as to count ten will be entered in the County's favor.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion will be granted.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
